**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| Amy Hadley, | Case No. 3:24-cv-00029-DRL-MGG |
| *Plaintiff*, | |
| v. | |
| The City of South Bend, the South Bend Police Department, St. Joseph County, the St. Joseph Police Department, and the Board of Commissioners of St. Joseph County, | |
| *Defendants*. | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

---

Marie Miller
IN Attorney No. 34591-53
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012
480-557-8300 (Phone)
480-557-8305 (Fax)
mmiller@ij.org

Patrick Jaicomo
MI Attorney No. P75705
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
703-682-9320 (Phone)
703-682-9321 (Fax)
pjaicomo@ij.org

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................iv

I.   INTRODUCTION.................................................................................................1

II.  FACTS.................................................................................................................2

III. ARGUMENT ......................................................................................................3

    A.  Federal Claims: Hadley has adequately pled that her property was taken without just compensation under the Fifth Amendment and Section 1983. ..............4

        1.  Defendants mischaracterize Hadley's claims and misapply *Monell*...................4

            a.  Defendants misread the complaint as alleging a tort. ..............................4

            b.  Hadley easily meets any *Monell* requirement for her Section 1983 claim, and she need not plead a municipal policy for her Fifth Amendment claim..................................................................................5

        2.  The Seventh Circuit's *Johnson* decision has been abrogated: Under Supreme Court precedent after *Johnson*, intentional destruction of property is no different from appropriation for purposes of the Just Compensation Clause. ..................................................................................7

        3.  Hadley has sufficiently alleged her property was taken without just compensation. .................................................................................................9

        4.  The defendants bear the burden to establish any exception to the Just Compensation Clause, and they cannot do so. ............................................... 11

            a.  Hadley has alleged intentional possession and destruction, not mere entry. ............................................................................................ 11

            b.  Property destruction through the exercise of police power is not exempt from the Just Compensation Clause. .........................................12

            c.  There is no "necessity" defense to just compensation claims, and even if there were it would not apply. .......................................................14

B.  State Claims: Under the Indiana Constitution, Hadley has adequately pled that her property was taken and her particular services were demanded without just compensation. ...................................................................... 16

    1.  Hadley has adequately alleged a taking of her property and the demand of her particular services. .................................................................. 18

        a.  Takings Clause ................................................................................... 18

        b.  Particular Services Clause .................................................................. 20

    2.  Indiana's Takings and Particular Services Clauses are self-executing. .......... 22

    3.  Immunity under the Indiana Tort Claims Act does not apply. ........................ 23

C.  If this Court dismisses the federal claims, the state-law claims should be remanded. ........................................................................................................ 23

IV. CONCLUSION ...................................................................................................... 25

CERTIFICATE OF SERVICE ...................................................................................... 27

## TABLE OF AUTHORITIES

**Cases:**

*Armstrong v. United States*,
364 U.S. 40 (1960). ....................................................................................... 1, 9, 14

*AmeriSource Corp. v. United States*,
525 F.3d 1149 (CA Fed. 2008). ...................................................................... 1, 8, 13

*Ark. Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012). ............................................................................................ 9, 10

*Baker v. City of McKinney*,
571 F. Supp. 3d 625 (E.D. Tex. 2021). ............................................................... 6

*Baker v. City of McKinney*,
601 F. Supp. 3d 124 (E.D. Tex. 2022). ............................................................. 7, 10

*Baker v. City of McKinney*,
84 F.4th 378 (CA5 2023). ................................................................................. 1, 14

*Baker v. City of McKinney*,
93 F.4th 251 (CA5 2024). ...................................................................................... 14

*Baker v. City of McKinney*,
No. 23A891 (U.S. Apr. 9, 2024). .......................................................................... 14

*Bayh v. Sonnenburg*,
573 N.E.2d 398 (Ind. 1991) ............................................................................. 20, 21

*Bennis v. Michigan*,
516 U.S. 442 (1996). ............................................................................... 7, 8, 12, 13

*Birge v. Town of Linden*,
57 N.E.3d 839 (Ind. Ct. App. 2016). ................................................................... 23

*Bishop v. Mayor & City Council of Macon*,
7 Ga. 200 (1849). ................................................................................................... 15

*Bojicic v. DeWine*,
No. 21-4123, 2022 WL 3585636 (CA6 Aug. 22, 2022). .......................................... 1

*Bradley v. Village of University Park*,
929 F.3d 875 (CA7 2019). ....................................................................................... 5

*Buchman v. State*,
59 Ind. 1 (1877). ..................................................................................................... 21

iv

*Cantrell v. Morris*,
    849 N.E.2d 488 (Ind. 2006). ........................................................................ 22

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021). .........................................................8, 9, 11, 12, 19

*Cheatham v. Pohle*,
    789 N.E.2d 467 (Ind. 2003). ....................................................................18, 20

*City of New York v. Lord*,
    17 Wend. 285 (N.Y. Sup. Ct.). ...................................................................15

*City of Tupelo v. O'Callaghan*,
    208 So.3d 556 (Miss. 2017). ................................................................ 22, 23

*Collins v. Day*,
    644 N.E.2d 72 (Ind. 1994)...........................................................................17

*Conyers v. City of Chicago*,
    10 F.4th 704 (CA7 2021). .........................................................................8, 14

*Dayton v. City of Asheville*,
    115 S.E. 827 (N.C. 1923). ............................................................................15

*DeVillier v. Texas*,
    601 U.S. —, No. 22-913 (Apr. 16, 2024). ................................................. 7

*Dronberger v. Reed*,
    11 Ind. 420 (1859).........................................................................................18

*DW Aina Le'a Dev., LLC v. State Land Use Comm'n*,
    477 P.3d 836 (Haw. 2020). ......................................................................... 22

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles County*,
    482 U.S. 304 (1987).............................................................................7, 12, 14

*Foreman v. State ex rel. Dep't of Nat. Res.*,
    387 N.E.2d 455 (Ind. Ct. App. 1979).........................................................18

*Freeman v. Indiana*,
    No. 17-cv-317, 2019 WL 357051 (N.D. Ind. Jan. 29, 2019)....................... 4

*Grant v. United States*,
    1 Ct. Cl. 41 (1863)........................................................................................16

*Hale v. Lawrence*,
    21 N.J.L. 714 (1848). ...................................................................................15

*Horne v. Department of Agriculture*,
　　576 U.S. 350 (2015). ........................................................................................... 8, 13

*Huffman v. Hains*,
　　865 F.2d 920 (CA7 1989). ........................................................................................ 24

*Ind. Dep't of Pub. Welfare v. Payne*,
　　622 N.E.2d 461 (Ind. 1993). ...................................................................................17

*Ind. State Police v. May*,
　　469 N.E.2d 1183 (Ind. Ct. App. 1984). ..............................................................19, 23

*Israel v. State*,
　　8 Ind. 467 (1856). ....................................................................................................21

*Jarvis v. Pinckney*,
　　21 S.C.L. (3 Hill) 123 (1836) ...................................................................................15

*John Corp. v. City of Houston*,
　　214 F.3d 573 (CA5 2000) ............................................................................... 8, 13, 18

*Johnson v. Manitowoc County*,
　　635 F.3d 331 (CA7 2011). ......................................................................................1, 7

*Johnson v. Williams*,
　　568 U.S. 289 (2013) ................................................................................................16

*Khan v. State Oil Co.*,
　　93 F.3d 1358 (CA7 1996). ........................................................................................ 24

*Knick v. Township of Scott*,
　　588 U.S. 180 (2019) ...............................................................................................5, 6

*Lech v. Jackson*,
　　791 F. App'x 711 (CA10 2019). ..................................................................................1

*Loretto v. Teleprompter Manhattan CATV Corp.*,
　　458 U.S. 419 (1982) ......................................................................................1, 12, 13

*Lucas v. S.C. Coastal Council*,
　　505 U.S. 1003 (1992). .......................................................................................... 12, 13

*Miller v. State*,
　　517 N.E.2d 64 (Ind. 1987). ....................................................................................17

*Mitchell v. Harmony*,
　　54 U.S. (13 How.) 115 (1851). ................................................................................16

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978). .........................................................................................5, 6

*Mugler v. Kansas*,
    123 U.S. 623 (1887). ...........................................................................................12

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)..................................................................................................11

*O'Bannon v. City of Anderson*,
    733 N.E.2d 1 (Ind. Ct. App. 2000). ...................................................................... 23

*Olive Can Co. v. Martin*,
    906 F.2d 1147 (CA7 1990). .................................................................................. 25

*Ostipow v. Federspiel*,
    824 F. App'x 336 (CA6 2020). .................................................................................1

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001).............................................................................................. 9

*Pittsfield Dev., LLC v. Travelers Indem. Co.*,
    542 F. Supp. 3d 791 (N.D. Ill. 2021)...................................................................11

*Platt v. City of Waterbury*,
    45 A. 154 (Conn. 1900). .......................................................................................15

*Pumpelly v. Green Bay & Miss. Canal Co.*,
    80 U.S. (11 Wall.) 166 (1872)...........................................................................9, 14

*Rubottom v. McClure*,
    4 Blackf. 505 (1838)..............................................................................................18

*RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*,
    672 F.3d 476 (CA7 2012)..................................................................................24, 25

*Shultz v. Schneider Elec. USA, Inc.*,
    No. 3:23-cv-846-DRL-MGG, Dkt.29 (N.D. Ind. Jan. 25, 2024)............................ 25

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
    578 F.3d 505 (CA7 2009). ..................................................................................24, 25

*Slaybaugh v. Rutherford County*,
    No. 23-5765 (CA6). ................................................................................................1

*Smith v. Wis. Dep't of Agr., Trade & Consumer Prot.*,
    23 F.3d 1134 (CA7 1994)................................................................................... 16, 17

*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*,
  16 P.3d 533 (Utah 2000)................................................................................. 22

*Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*,
  897 F.3d 797 (CA7 2018)............................................................................... 8

*State v. Katz*,
  179 N.E.3d 431 (Ind. 2022). ........................................................................ 24

*State v. Kimco of Evansville, Inc.*,
  902 N.E.2d 206 (Ind. 2009)..................................................................... 16, 18

*Steele v. City of Houston*,
  603 S.W.2d 786 (Tex. 1980). ....................................................................10, 23

*Stone v. Fritts*,
  82 N.E. 792 (Ind. 1907)..................................................................................19

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,
  560 U.S. 702 (2010). ....................................................................................... 9

*Town of Linden v. Birge*,
  204 N.E.3d 229 (Ind. 2023). ..............................................................11, 12, 18, 19, 23

*Tyler v. Hennepin County*,
  598 U.S. 631 (2023)........................................................................................14

*United States v. Causby*,
  328 U.S. 256 (1946)........................................................................................14

*United States v. Clarke*,
  445 U.S. 253 (1980)......................................................................................... 7

*United States v. Cress*,
  243 U.S. 316 (1917)........................................................................................14

*United States v. Dow*,
  357 U.S. 17 (1958)........................................................................................... 7

*United States v. Russell*,
  80 U.S. (13 Wall.) 623 (1871)........................................................................15

*United States v. Wahi*,
  850 F.3d 296 (CA7 2017)................................................................................ 8

*Van Harken v. City of Chicago*,
  103 F.3d 1346 (CA7 1997)........................................................................24, 25

*Webb v. Baird*,
    6 Ind. 13 (1854)................................................................................................21, 22

*Wonsey v. City of Chicago*,
    940 F.3d 394 (CA7 2019)..........................................................................................11

*Yawn v. Dorchester County*,
    1 F.4th 191 (CA4 2021)......................................................................................... 1, 10

*YMCA v. United States*,
    395 U.S. 85 (1969). ........................................................................................... 10, 13

*Zinn v. State*,
    334 N.W.2d 67 (Wis. 1983)......................................................................................... 22

*Zitter v. Petruccelli*,
    744 F. App'x 90 (CA3 2018). ......................................................................................1

**Constitutional Provisions:**

Ind. Const. art. I, § 21. ..............................................................................17, 18, 20, 22, 23

Ind. Const. art. I, § 12. ............................................................................................ 22

**Statutes:**

42 U.S.C. § 1983. ..................................................................................................... 6

Act. of Apr. 19, 1816, ch. 57, § 4, Stat. 289....................................................................16

Ind. Code § 32-42-1-16.............................................................................................17

Ind. Code § 34-13-3-1. ............................................................................................. 23

Northwest Ordinance of 1787.......................................................................................16

**Other:**

Restatement (Second) of Torts. ....................................................................................15

Jeffrey S. Sutton, *51 Imperfect Solutions* (2018)................................................................. 24

Justice Derek R. Molter, *Joining the Indiana Supreme Court: Rookie Year Reflections*,
    57 Ind. L. Rev. 1 (2023). ...................................................................................... 24

Loretta H. Rush & Marie Forney Miller, *Cultivating State Constitutional Law to Form a More
    Perfect Union—Indiana's Story*, 33 Notre Dame J.L. Ethics & Pub. Pol'y 377 (2019)............. 24

## I.  INTRODUCTION

If a SWAT team destroys your home trying to apprehend a criminal suspect, who pays for the damage? You—an innocent, unlucky homeowner? Or the public—on whose behalf the raid was conducted? That is what this case is about. Plaintiff Amy Hadley asks whether innocent homeowners are entitled to just compensation under the Fifth Amendment and under the Indiana Constitution when the government destroys property while exercising "police powers."

Supreme Court precedent provides a straightforward answer for the Fifth Amendment. The Just Compensation Clause was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). But some courts, including the Seventh Circuit in *Johnson v. Manitowoc County*, have adopted a categorical police-power exception to the Just Compensation Clause. 635 F.3d 331, 336 (CA7 2011). The Seventh Circuit admitted this exception "seems quite unfair." *Id.* Indeed, it is as unfair as holding a lottery to decide who pays the police chief's salary each year. It also conflicts with the Constitution's plain text, our nation's history and tradition, and Supreme Court precedent. The result is a growing circuit split[1] and abrogation of the Seventh Circuit's police-power exception. Supreme Court precedent after *Johnson* confirms that a taking may occur with some power other than eminent domain.

The Indiana Supreme Court has declared that the Takings Clause of Indiana's Constitution

---

[1] The Third, Tenth, and Federal Circuits have adopted the same categorical rule as the Seventh. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (CA Fed. 2008); *Zitter v. Petruccelli*, 744 F. App'x 90, 96 (CA3 2018); *Lech v. Jackson*, 791 F. App'x 711, 717 (CA10 2019). The Fourth and Fifth Circuits (and the Supreme Court) have rejected it. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982); *Baker v. City of McKinney*, 84 F.4th 378, 385 (CA5 2023); *Yawn v. Dorchester County*, 1 F.4th 191, 195 (CA4 2021). The Sixth Circuit has vacillated in unpublished opinions (*compare Ostipow v. Federspiel*, 824 F. App'x 336, 341–42 (CA6 2020) (concluding it was not "clearly established" that the police power is subject to the Takings Clause), *with Bojicic v. DeWine*, No. 21-4123, 2022 WL 3585636, at *8 (CA6 Aug. 22, 2022) (rejecting "police power" exception to the Takings Clause)), and is scheduled to hear oral argument on the issue on May 9, 2024. *See Slaybaugh v. Rutherford County*, No. 23-5765 (CA6).

1

tracks the Fifth Amendment's Takings Clause. But no Indiana court has decided which side of the circuit split the state Takings Clause should follow, if either. We submit that it should follow the side that has rejected a police-power exception to Just Compensation. Likewise, no Indiana court has decided the applicability of Indiana's Particular Services Clause to facts like those here. We submit that because Hadley was required to provide private homeowner services that not all members of the public alike can supply, her claim under this clause should proceed, too.

Thus, this court should hold that (1) Hadley's federal claims may proceed because she has stated a Fifth Amendment takings claim under Supreme Court precedent, which abrogated *Johnson*; and (2) Hadley's state-law claims may proceed because she has plausibly alleged that her property and services were taken without just compensation. If this Court instead dismisses Hadley's federal claims, the Court should remand the state-law claims to the Indiana court where they originated before defendants removed this case.

## II.  FACTS

Amy Hadley and her children were innocent of any wrongdoing when police surrounded their home and severely damaged it on June 10, 2022. Police officers of St. Joseph County and the City of South Bend were looking for a fugitive. Dkt.5, ¶25. But the officers made an error, misidentifying Hadley's house as the place where the man was active on Facebook. Dkt.5, ¶¶25–27. The fugitive was not, and had never been, at Hadley's house. Dkt.5, ¶44. Nor did Hadley or her children have any connection to him other than the one created by the officers' error. Dkt.5, ¶¶4, 27. When officers surrounded the home, only Hadley's teenage son and the family kitten were inside. Dkt.5, ¶30. Officers ordered everyone out, and Hadley's son exited with his hands high, while officers aimed guns at him. Dkt.5, ¶¶30–31. Officers immediately knew he was not the

fugitive and did not suspect him of any crime. Dkt.5, ¶33. The officers also had no reason to believe the fugitive was holding anyone hostage. Dkt.5, ¶39. Nor had they engaged in a hot pursuit and watched him run into the house; they thought he was passing the time on Facebook. Dkt.5, ¶39.

Soon after Hadley's son exited the house, Hadley and her daughter arrived down the street. Dkt.5, ¶36. Officers kept them from going to the house and asked if they had seen the fugitive. Dkt.5, ¶¶37, 51. Hadley and her daughter explained that they had never seen or heard of that person, and they knew—thanks to their security cameras—that no one was in the house. Dkt.5, ¶38. For about 40 minutes after Hadley's son exited the house, officers directed orders at it without seeing anyone enter, exit, or move inside. Dkt.5, ¶¶34, 40. Then they destroyed Hadley's security cameras and fired dozens of tear gas grenades at the home, shattering the windows and flooding the house with toxic fumes. Dkt.5, ¶¶40, 43. Officers in gas masks entered the house, poked holes in walls, flipped furniture, ripped paneling and a fixture from the walls, and generally ransacked the whole house. Dkt.5, ¶43. Naturally, the fugitive who had never been there was not found. Dkt.5, ¶44. He was apprehended elsewhere about four days later. Dkt.5, ¶48.

Nearly everything porous in the house was destroyed from the tear gas, and the home was uninhabitable for days. Dkt.5, ¶¶41, 43, 54. Hadley and her kids slept in the car and other places until the fumes dissipated enough to enter the home. Dkt.5, ¶54, 64. Then Hadley spent many days trying to clean and put the house back together as much as she could, herself. Dkt.5, ¶¶56, 65. The damage totaled approximately $16,000. Dkt.5, ¶63. Hadley contacted the City and County, seeking just compensation. Dkt.5, ¶¶57–61. Each denied her compensation. Dkt.5, ¶¶59–62.

## III. ARGUMENT

Hadley's claims under the Fifth Amendment and Section 1983 should proceed because the

Seventh Circuit's *Johnson* decision has been abrogated by Supreme Court precedent foreclosing a police-power exception to Just Compensation.[2] Hadley's state claims should also proceed. That is because Indiana's Takings Clause should track Fifth Amendment takings cases that reject a police-power exception and require just compensation for claims like Hadley's.

If this Court dismisses the federal claims, the state-law claims should be remanded to the Indiana court where they originated. The Seventh Circuit presumes that when all federal claims fall out before trial, courts should relinquish jurisdiction over pendant claims. No exception applies here. Respect for Indiana courts and for the development of state constitutional law confirm that the state claims should be remanded if the federal claims are dismissed.

### A. Federal Claims: Hadley has adequately pled that her property was taken without just compensation under the Fifth Amendment and Section 1983.

We address Hadley's federal claims in four parts. First, we correct two related errors defendants make concerning the nature of Hadley's takings claims. Next, we explain why *Johnson* no longer controls. Third, we explain why Hadley has adequately alleged a taking. Finally, we explain why the defendants failed to carry, and cannot carry, their burden to show that an exception to the Just Compensation Clause applies.

#### 1. Defendants mischaracterize Hadley's claims and misapply *Monell*.

##### a. Defendants misread the complaint as alleging a tort.

The City misunderstands the nature of Hadley's claims. She has brought takings claims for Just Compensation. She has not alleged that any police officer acted tortiously (or otherwise unlawfully) when storming her house and destroying her property. Nor has she alleged that the

---

[2] Our research has uncovered no Seventh Circuit cases since the year *Johnson* was issued reaffirming *Johnson*'s categorical police-power exception. An unpublished case from this district relied on *Johnson* without addressing any cases that abrogated it. *See Freeman v. Indiana*, No. 17-cv-317, 2019 WL 357051, at *12 (N.D. Ind. Jan. 29, 2019).

City and County are liable based "on a *respondeat superior* theory"—that is, that the government entity "employs a tortfeasor."[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). She has alleged a taking: the City and County themselves violated the Fifth Amendment by denying her compensation for the lawful property damage inflicted for a public purpose. Takings claims accrue not when the government takes someone's property but when it "takes . . . property *without paying for it.*" *Knick v. Township of Scott*, 588 U.S. 180, 189 (2019) (emphasis added). The alleged wrong lies not in the destruction of property—which Hadley concedes was lawful—but in the City and County's failure to pay for it, which Hadley argues is unconstitutional.

### b. Hadley easily meets any *Monell* requirement for her Section 1983 claim, and she need not plead a municipal policy for her Fifth Amendment claim.

The City contends that Count 3 should be dismissed because Hadley has not adequately alleged a *Monell* municipal policy. This is wrong for at least two reasons.

First, if a municipal policy is required for takings claims—not torts—under Section 1983, Hadley has easily cleared this requirement. "The 'official policy' requirement for *Monell* claims is 'intended to distinguish acts of the *municipality* from acts of *employees* of the municipality' and to limit liability to 'action for which the municipality is actually responsible.'" *Bradley v. Village of University Park*, 929 F.3d 875, 884 (CA7 2019). As a result, "[t]he *Monell* requirement can be satisfied by 'a single decision attributable to a municipality.'" *Id.* As explained above, Hadley seeks to hold the City and County liable for denying her compensation. She does not seek to hold them vicariously liable for the officers' acts in destroying the property. So she need not allege that the police officers acted pursuant to a policy or custom; she needs to allege that the City's and County's denial of compensation were acts of the City and County, themselves. She has done so.

---

[3] *Contra* Dkt.18 at 5 (City wrongly stating that "Plaintiff asserts only *respondeat superior* liability").

She alleged that she "contacted South Bend and St. Joseph County, including their police departments, . . . by letters asserting her claims to monetary compensation for the damage to her property. She specified that her claims are for the taking of her property, to which she is entitled just compensation under the federal and state constitutions. In each letter, she requested an answer by July 7, 2023." Dkt.5, ¶59. She alleged that "[o]nly South Bend responded," and that she again contacted the City with a letter saying that "if she did not receive a response from the City by August 25, 2023 stating otherwise, she will take it to mean 'that the City has decided not to reconsider its denial of [her] takings claims and as a refusal to provide just compensation." Dkt.5, ¶¶60–61. The City did not respond. Dkt.5, ¶61. Hadley thus clearly alleged that the City and County, themselves, denied her compensation. *Cf. Baker v. City of McKinney*, 571 F. Supp. 3d 625, 635 (E.D. Tex. 2021) (holding that plaintiff satisfied *Monell* municipal-policy requirement by alleging that she "requested compensation from the City of McKinney, but the City denied the request"); *see also Monell*, 436 U.S. at 686–87 (recounting history of Section 1983 as focused on ensuring redress for circumstances where "the city had taken private property for public use, without compensation" (cleaned up)). The City and County's motions to dismiss further confirm that the governments, themselves, refuse to provide just compensation.

Second, Hadley has alleged a Fifth Amendment taking under "both [42] U.S.C. § 1983 and the incorporated Fifth Amendment itself, which is self-executing." Dkt.5, ¶92. The municipal-policy requirement of *Monell* applies only to Section 1983, not to the Fifth Amendment itself. *See Monell*, 436 U.S. at 662 (stating question presented as "[w]hether local government officials and/or local independent school boards are 'persons' within the meaning of 42 U.S.C. § 1983 . . ."). The Fifth Amendment itself requires just compensation when a taking has occurred. *Knick*, 588 U.S. at 190 (explaining "that 'the act of taking' is the 'event which gives rise to the

6

claim for compensation'" (quoting *United States v. Dow*, 357 U.S. 17, 22 (1958)); *see DeVillier v. Texas*, 601 U.S. —, No. 22-913 (Apr. 16, 2024) (holding that the Just Compensation Clause may be satisfied by a state cause of action that provides for just compensation for a Fifth Amendment taking). A *Monell* policy is not an element of a taking, so Hadley has alleged a taking without establishing that the police officers acted under a municipal policy. *See infra* Part III.A.3. The Fifth Amendment itself thus entitles her to Just Compensation.

Also, although it is an open question, Hadley asserts that the Fifth Amendment is self-executing; she does not need the Section 1983 vessel for her takings claim. *See* Dkt.5, ¶92; *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 315 (1987) (recognizing "the self-executing character of the constitutional provision with respect to compensation" and "that claims for just compensation are grounded in the Constitution itself" (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)); *Baker v. City of McKinney*, 601 F. Supp. 3d 124, 145 (E.D. Tex. 2022), *rev'd on other grounds*, 84 F.4th 378 (CA5 2023) ("[B]ecause the Fifth Amendment is self-executing, [the plaintiff's] claim under the Fifth Amendment Takings Clause is not dependent upon the § 1983 vessel.").

2. **The Seventh Circuit's *Johnson* decision has been abrogated: Under Supreme Court precedent after *Johnson*, intentional destruction of property is no different from appropriation for purposes of the Just Compensation Clause.**

*Johnson* adopted a rule from the Federal Circuit that "the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Johnson*, 635 F.3d at 336. This rule was based on a statement from the Supreme Court's decision in *Bennis v. Michigan*: "The government may not be required to compensate an owner of property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."

516 U.S. 442, 452 (1996). According to the Federal Circuit, this statement "suggest[ed] that so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." *AmeriSource*, 525 F.3d at 1154. Assuming *Bennis* stood for that proposition,[4] though, Supreme Court cases after *Bennis* abrogate it.

In *Horne v. Department of Agriculture*, for example, the Court held that a departmental order requiring raisin growers to give some of their crop to the government was a taking requiring just compensation. 576 U.S. 350 (2015). The order was an exercise of police power, not eminent domain. Likewise, in *Cedar Point Nursery v. Hassid*, the Court held that a regulation giving union organizers a right of access on employers' property was a taking requiring just compensation. 594 U.S. 139 (2021). Again, the regulation was an exercise of police power, not eminent domain.

The Seventh Circuit has acknowledged regulatory takings under *Horne* and *Cedar Point*. *See, e.g.*, *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 802 (CA7 2018); *Conyers v. City of Chicago*, 10 F.4th 704, 711 (CA7 2021); *see also John Corp. v. City of Houston*, 214 F.3d 573, 578 (CA5 2000) ("The Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking."). And the Court has recognized that "[w]hen an intervening Supreme Court decision unsettles our precedent, it is the ruling of the Court that sits on 1 First Street that must carry the day." *United States v. Wahi*, 850 F.3d 296, 302 (CA7 2017). So even accepting the Federal Circuit's reading of *Bennis*, it's clear that *Horne* and *Cedar Point* marked a return to prior Supreme Court precedent, which held that destroying property is the same as appropriating it under the Takings Clause. In

---

[4] We disagree that *Bennis* ever stood for that proposition, as we explain below. See Part.III.A.4.b.

*Pumpelly v. Green Bay & Miss. Canal Co.*, for example, the Supreme Court held that the Fifth Amendment's just compensation requirement applied when the government erected a dam that flooded the plaintiff's property. 80 U.S. (11 Wall.) 166, 181 (1872) ("[W]here real estate is actually invaded . . . so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution."). The Court explained:

> It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, . . . it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not *taken* for the public use.

*Id.* at 177–78. After *Bennis*, the Supreme Court has cited *Pumpelly* approvingly and has repeatedly affirmed that property destruction is akin to physical appropriation, requiring Just Compensation.[5] These physical intrusions are the "clearest sort of taking." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). Courts "assess them using a simple, *per se* rule: The government must pay for what it takes." *Cedar Point*, 594 U.S. at 148.

### 3. Hadley has sufficiently alleged her property was taken without just compensation.

Not all property destruction is a taking. A plaintiff must allege—as Hadley has—that the government (1) caused property damage (2) intentionally or foreseeably and (3) for public use.

**Cause.** The government need not pay for damage it did not cause. The government is off the hook when the causal chain is too attenuated, *see Armstrong*, 364 U.S. at 48 (listing cases), or

---

[5] *See, e.g.*, *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012) (citing *Pumpelly* and explaining that "[t]here is [] no solid grounding in precedent for setting flooding apart from all other government intrusions on property"); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713 (2010) ("[W]hen the government uses its own property in such a way that it destroys private property, it has taken that property." (citing *Pumpelly*)).

when the property's destruction was inevitable, as in the case of fires, *see, e.g.*, *YMCA v. United States*, 395 U.S. 85, 97 (1969) (Harlan, J., concurring).[6] Here, though, the City and County indisputably directly caused the damage to Hadley's property by assaulting her home. Hadley's property would have sustained no damage without the governments' actions.

**Intentionally or foreseeably.** The second requirement is that the "invasion is intended or is the foreseeable result" of government action. *Ark. Game & Fish Comm'n*, 568 U.S. at 39. So, for example, when the government sprayed pesticides to reduce the mosquito population but had no reason to believe the spraying would kill any bees, the government did not have to compensate the owner of bees that allegedly died from the pesticide. *See Yawn*, 1 F.4th at 192. By contrast, here it was certainly foreseeable that the assault on Hadley's home would cause significant property damage. Police broke cameras, poked holes in walls, and fired dozens of teargas grenades through windows, saturating the property and all its contents. The damage may not have been the objective, but the City and County chose to raid the house knowing that the raid would destroy property. *See Baker*, 601 F. Supp. 3d at 143–44, *rev'd on other grounds*, 84 F.4th 378 (CA5 2023).

**Public use.** Finally, the destructive act must have been for a public use—which is generally satisfied by lawful, or "authorized" government action. *Ark. Game & Fish Comm'n*, 568 U.S. at 39. On the allegations of Hadley's complaint, the officers' destructive acts were indeed lawful; the City and County intended the raid to apprehend a dangerous fugitive for the benefit of the public at large. *See, e.g.*, *Steele v. City of Houston*, 603 S.W.2d 786, 791–92 (Tex. 1980) ("public use" requirement satisfied when "the City ordered the destruction of the property . . . to apprehend

---

[6] Another way to view "inevitable destruction" is that the value of the property about to be destroyed is zero, so just compensation is $0.

10

armed and dangerous men who had taken refuge in the house").[7]

> ### 4. The defendants bear the burden to establish any exception to the Just Compensation Clause, and they cannot do so.

Because Hadley adequately pled a *prima facie* claim for just compensation, the burden shifts to the government to show that an exception applies to the Fifth Amendment's categorical command. When the plain text of a constitutional provision establishes a right—here, the right to compensation for taken property—it is the government's burden to establish a historically grounded exception. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022) (observing that when an Amendment's "plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition . . . ."); *see also id.* at 2130 ("This Second Amendment standard accords with how we protect other constitutional rights."). The Defendants here have not even tried, forfeiting or waiving any arguments that an exception applies. *See Pittsfield Dev., LLC v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 802 n.3 (N.D. Ill. 2021) ("Arguments raised for the first time in a reply brief are deemed waived."); *accord Wonsey v. City of Chicago*, 940 F.3d 394, 398–99 (CA7 2019). They could not succeed if they tried.

> #### a. Hadley has alleged intentional possession and destruction, not mere entry.

The government need not compensate a property owner whenever police enter a property to conduct a lawful search. *See Cedar Point*, 594 U.S. at 159 (addressing dissent's concern for "a host of state and federal government activities involving *entry* onto private property" (emphasis added)). But as discussed above and below, intentional *destruction* (not mere entry) has been

---

[7] The Indiana Supreme Court has described an inverse condemnation claim as "(1) a taking or damaging (2) of private property (3) for public use (4) without payment of just compensation (5) by a government entity." *Town of Linden v. Birge*, 204 N.E.3d 229, 234 (Ind. 2023). Hadley meets all these requirements: (1) damage (2) of her private property (3) for a public law-enforcement use (4) without payment (5) by a City and County.

treated as a taking since the 1800s. Hadley does not contend that she would have been entitled to compensation for an isolated entrance on her property; in that case, there would have been no appropriation of property. *See Town of Linden v. Birge*, 204 N.E.3d 229, 237–38 (Ind. 2023). She alleges that the City and County did appropriate her property—some of it permanently, some of it for a certain time while her home was uninhabitable. *See Cedar Point*, 594 U.S. at 152, 155–56.

### b. Property destruction through the exercise of police power is not exempt from the Just Compensation Clause.

A categorical exception to the Just Compensation Clause for property destroyed through exercise of police power "would essentially nullify [the Supreme Court's] affirmation of limits to the noncompensable exercise of the police power." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1026 (1992). Not only do "[the Court's] cases provide no support for this," *id.*, but the Supreme Court has explained that a governmental act might be "within the State's police power" yet "[i]t is a separate question [] whether an otherwise valid [exercise of the police power] so frustrates property rights that compensation must be paid." *Loretto*, 458 U.S. at 425. Ultimately, the "entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings" as eminent domain. *First Eng.*, 482 U.S. at 316. And "[t]he essential question is not . . . whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It is whether the government has physically taken property for itself or someone else—by whatever means[.]" *Cedar Point*, 594 U.S. at 149.

To be sure, uses of police power do not always require just compensation. The government need not compensate owners when, within its police power, it prohibits "noxious use of [] property [that would] inflict injury upon the community." *Mugler v. Kansas*, 123 U.S. 623, 669 (1887). Nor when the government acquires title to property through a forfeiture proceeding, *see Bennis*, 516

U.S. at 452, or when it causes damage defending property from destruction or appropriation, in action that only "incidentally [] benefit[s] the public" and principally benefits the claimant, *YMCA*, 395 U.S. at 92. But the fact that governments are not "liable under the Just Compensation Clause to property owners every time policemen" damage property does not mean governments are never liable for destruction under the police power. *Ibid.* That would create the forbidden limitless "noncompensable exercise of the police power." *Lucas*, 505 U.S. at 1026.

When adopting a police-power exception, the *Johnson* panel relied on *AmeriSource*, in which the Federal Circuit critically misread Supreme Court precedent. The *AmeriSource* panel understood the Supreme Court (in *Bennis*) as "suggest[ing] that so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." *AmeriSource*, 525 F.3d at 1154. But precedent from before and after *Bennis* demonstrates that understanding was wrong then and cannot prevail now. *See Horne*, 576 U.S. at 367; *Loretto*, 458 U.S. at 425–26 (finding an otherwise valid exercise of "the State's police power" was a taking requiring compensation). Other circuits recognize as much. *See, e.g.*, *John Corp.*, 214 F.3d at 578–79 ("[S]imply because the City did not formally use its powers of eminent domain to destroy Appellants' property does not mean that its actions could not amount to a taking requiring just compensation.").

After all, the Court in *Bennis* itself explained that "[t]he government may not be required to compensate an owner for property *which it has already lawfully acquired* under the exercise of governmental authority other than the power of eminent domain." 516 U.S. at 452 (emphasis added). This statement stands only for the proposition that when the government has acquired ownership of property through a lawful, formal proceeding (such as forfeiture), no compensation

is due.[8] *See Conyers*, 10 F.4th at 711 (Seventh Circuit explaining that this statement in *Bennis* was "[c]ritically" tied to "the Michigan court's order transferr[ing] 100% of the ownership of the car to the state, and it did so permanently, for a punitive reason"). The statement did not tacitly overturn Supreme Court precedent observing takings through police power. Indeed, neither the Seventh Circuit in *Johnson* nor the Federal Circuit in *AmeriSource* responded to the mound of Supreme Court precedent recognizing police-power takings.[9]

### c. There is no "necessity" defense to just compensation claims, and even if there were it would not apply.

A Fifth Circuit panel recently rejected a broad police-power exception to Just Compensation but held that "necessity" is a defense. *Baker*, 84 F.4th at 385. There, a criminal allegedly high on methamphetamine had taken a hostage into a home with firearms. SWAT officers used explosives, toxic gas, and other techniques to apprehend him. The parties agreed that the damage to the home "was necessary." *Id.* at 380. The panel took the parties at their word and held that no compensation was required because "it was objectively necessary for officers to damage or destroy [the] property in an active emergency to prevent imminent harm to persons." *Id.* at 388.

Without any briefing on this topic from the parties, the panel's decision was erroneous.[10] *See Baker v. City of McKinney*, 93 F.4th 251, 251–58 (CA5 2024) (Elrod and Oldham, JJ., dissenting

---

[8] That principle—inapplicable here—has limits. A government cannot "'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to appropriate." *Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023).

[9] *See, e.g.*, *Pumpelly*, 80 U.S. (11 Wall.) at 181; *First Eng.*, 482 U.S. at 316–17; *Armstrong*, 364 U.S. at 48–49 ("[T]he Government's action did destroy [the liens] and . . . did thereby take the property value of those liens within the meaning of the Fifth Amendment."); *United States v. Causby*, 328 U.S. 256 (1946) (finding low-level overhead flights caused property damage warranting compensation); *United States v. Cress*, 243 U.S. 316 (1917). The parties in *Johnson* did not address *Pumpelly* or other cases relying on it.

[10] The *Baker* panel's decision on a ground not presented by the parties drew a six-judge vote in favor of rehearing en banc, along with a dissenting opinion criticizing the panel's reasoning. The case is poised for a petition for certiorari. *Baker v. City of McKinney*, No. 23A891 (U.S. Apr. 9, 2024) (granting extension of time to file a petition for a writ of certiorari to June 28, 2024).

from denial of reh'g en banc). In fact, a case the *Baker* panel cited for a necessity exception says precisely the opposite. *See City of New York v. Lord*, 17 Wend. 285, 291 (N.Y. Sup. Ct.), *aff'd*, 18 Wend. 126 (N.Y. 1837) ("[T]he individual concerned in the taking or destroying of the property is not personally liable. If the public necessity in fact exists, the act is lawful. . . . [A]nd yet these are common cases where the sufferers would be entitled to compensation from the national government within the constitutional principle (*Const. U.S. Art.* 5, of the Amendments).").

Necessity was a common-law defense against the tort of trespass. *See* Restatement (Second) of Torts § 197 (private necessity); *id.* § 196 (public necessity). The defense could establish that an interference with property rights was lawful, not that no compensation was due from the public. Indeed, cases abound explaining that public necessity is not an exception to Just Compensation. *See, e.g.*, *Dayton v. City of Asheville*, 115 S.E. 827, 829 (N.C. 1923) ("Public necessity may justify the taking, but cannot justify the taking without compensation."); *Platt v. City of Waterbury*, 45 A. 154, 162 (Conn. 1900) ("But, however great the necessity may be, it can have no effect on the right to compensation for property taken.").[11]

Supreme Court cases, too—though in dicta—have explained that public necessity is not an exception to the Just Compensation Clause. *See United States v. Russell*, 80 U.S. (13 Wall.) 623, 629 (1871) ("[P]rivate rights, under such extreme and imperious circumstances, must give way for the time to the public good, but the government must make full restitution for the sacrifice.");

---

[11] *See also, e.g.*, *Bishop v. Mayor & City Council of Macon*, 7 Ga. 200, 202 (1849) ("[I]n a case of actual necessity, to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity, the private property of an individual may be lawfully taken, and used or destroyed for the relief, protection or safety of the many. And in all such cases, while the agents of the public who officiate are protected from individual liability, the sufferers are nevertheless entitled, under the Constitution, to just compensation from the public for the loss."); *Hale v. Lawrence*, 21 N.J.L. 714, 728–29 (1848); *Jarvis v. Pinckney*, 21 S.C.L. (3 Hill) 123, 140 (1836) ("[A]s the danger to human life was great, [the property] might be destroyed upon the principle that private property may be taken for the public use[, but] . . . it can only be done upon just compensation. Both the Federal and State constitutions agree[.]").

*Mitchell v. Harmony*, 54 U.S. (13 How.) 115, 134 (1851); *see also Grant v. United States*, 1 Ct. Cl. 41, 47 (1863) ("[T]aking of private property for use or destruction, when the public exigency demands it, . . . is an exercise of the right of eminent domain[.]").

The evidence goes beyond court decisions. The Northwest Ordinance of 1787 provided that "should the public exigencies make it necessary, for the common preservation, to take any person's property, or to demand his particular services, full compensation shall be made for the same."[12]

The "necessity" defense that the Fifth Circuit panel created—apart from being unfounded—would not apply here. Unlike the plaintiff in *Baker*, neither Hadley nor the City or County has claimed that the destruction was necessary. Quite the opposite. The fugitive was never inside Hadley's home. Police had no reason to believe he had a hostage or that any imminent harm created an emergency like in *Baker*. After all, police surveilled the home for hours thinking he was holed up, spending time on Facebook. Far from necessary, the destruction was ineffective.

**B. State Claims: Under the Indiana Constitution, Hadley has adequately pled that her property was taken and her particular services were demanded without just compensation.**

The Indiana Supreme Court has declared that the state Takings Clause tracks the Fifth Amendment's Takings Clause. *See State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009). But no Indiana court has decided which side of the circuit split on a police-power exception to follow, if either. Indiana courts are not bound by Seventh Circuit precedent, for either federal- or state-law questions. *See Johnson v. Williams*, 568 U.S. 289, 305 (2013); *Smith v. Wis. Dep't of*

---

[12] The Northwest Ordinance governed Indiana pre-statehood. Once Indiana's population exceeded 60,000, citizens of the Indiana territory were authorized to enact a constitution "not repugnant" to the Northwest Ordinance. Act of Apr. 19, 1816, ch. 57, § 4, 3 Stat. 289, 290.

*Agr., Trade & Consumer Prot.*, 23 F.3d 1134, 1139 n.10 (CA7 1994); *Ind. Dep't of Pub. Welfare v. Payne*, 622 N.E.2d 461, 468 (Ind. 1993). And it is a question of state law whether the state constitution follows any line of federal caselaw. So regardless of whether *Johnson* has been abrogated, Indiana courts may decide that Hadley's arguments above about the Fifth Amendment are persuasive and that the state Takings Clause has no police-power exception. Or they could decide that state takings claims like Hadley's do not track the Fifth Amendment. *See, e.g.*, *Collins v. Day*, 644 N.E.2d 72, 75 (Ind. 1994) (departing from Fourteenth Amendment Privileges and Immunities Clause for parallel state constitutional right, explaining that prior Indiana precedents following federal law "do not preclude us from forming an independent standard for analyzing state constitutional claims"); *accord Miller v. State*, 517 N.E.2d 64 (Ind. 1987) (similarly departing from Sixth Amendment standard for parallel state constitutional guarantee). Hadley's claim under the state's Particular Services Clause is also one of first impression for Indiana courts.

In the rest of this section, we explain why Hadley can and should prevail on her state-law claims. In the next section, we explain why—if Hadley's federal claims are dismissed—this Court should remand the state-law claims to the Indiana court where she filed them.

The City and County argue that Hadley's state-law claims fail for three reasons: (1) she has not alleged a taking of her property or the demand of her particular services under Article I, Section 21, or Indiana Code § 32-42-1-16; (2) Indiana's Constitution does not supply a cause of action; and (3) the City is immune under the Indiana Tort Claims Act. None are persuasive.[13]

---

[13] The City also argues that the South Bend Police Department should be dismissed as a party. We agree to the dismissal of that party, alone, leaving the City of South Bend as a remaining party, along with all the county defendants.

    **1. Hadley has adequately alleged a taking of her property and the demand of her particular services.**

Hadley has alleged both a claim under Article I, Section 21's Takings Clause and a claim under the same section's Particular Services Clause. We address each in turn.

    **a. Takings Clause**

The Defendants rely on two Court of Appeals cases in support of their argument that Hadley has not stated a takings claim.[14] The first case, *Foreman*, stated a broad categorical rule that the Takings Clause "applies only to the taking of private property under the power of eminent domain." *Foreman v. State ex rel. Dep't of Nat. Res.* 387 N.E.2d 455, 461 (Ind. Ct. App. 1979). But more recent Indiana Supreme Court cases reject that rule. In *Town of Linden v. Birge*, for example, a taking occurred under Article I, Section 21 without eminent domain—when a county and town exercised police powers to modify a drainage system, causing repetitive flooding on private property. 204 N.E.3d 229, 234 (Ind. 2023) (citing *Pumpelly*).[15] Also since *Foreman*, the Indiana Supreme Court declared that the state's Takings Clause tracks the Fifth Amendment's. *See Cheatham v. Pohle*, 789 N.E.2d 467, 472–73 (Ind. 2003). And in tracking the federal Takings Clause, Indiana courts have recognized regulatory takings under Article I, Section 21. *See, e.g., Kimco of Evansville*, 902 N.E.2d at 211. As explained above, regulatory takings are exercises of the state's police power without the use of eminent domain. *See, e.g.*, *John Corp.*, 214 F.3d at 578 ("The

---

[14] The City misstates Hadley's takings claim as arising only under Indiana's inverse-condemnation statute. Dkt.18 at 6. Hadley's claim arises under the Takings Clause directly as well as under the Takings Clause and inverse-condemnation statute together. She does not rely on the state's statutory vehicle for her state takings claim. That is because Indiana's Takings Clause is self-executing, as we explain in subsection 2 below. Regardless, the City has not disputed that if Hadley has alleged an uncompensated taking under Article I, Section 21, she has stated a claim under the inverse-condemnation statute.

[15] Historically, too, Indiana's Takings Clause applied to uses of police power outside eminent domain. For instance, *Dronberger v. Reed*, 11 Ind. 420 (1859), involved damages to a landowner's property by a road crew. The Court held that a statute allowing the crew to enter upon land and make changes to the property for a road did not offend Article I, Section 21 because the statute also required the damages to be assessed and "paid out of the township treasury." *Id.* at 421. *Accord Rubottom v. McClure*, 4 Blackf. 505 (1838) (concerning damage from canal construction).

Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking.").

The second case, *Indiana State Police v. May*, 469 N.E.2d 1183 (Ind. Ct. App. 1984), provides no more support. The opinion's brevity provides little to go on, but the plaintiffs apparently made two arguments. First, they argued that "the acts of the police" were unlawful and so amounted to an "intentional tort," as opposed to negligence. *Id.* at 1183. Second, they argued that the police officers' unlawful acts were akin to a taking. *Id.* Nowhere does the opinion establish that the plaintiffs claimed a government entity failed to compensate them for *lawful* appropriation of property (a takings claim). So *May* likely stood only for the proposition that police officers' allegedly unlawful conduct falls under the Indiana Tort Claims Act (ITCA). It likely did not mean that because the ITCA covers officers' attempts to apprehend a suspect, the damage they cause never amounts to a constitutional taking. After all, a statute cannot limit a constitutional guarantee. But even if *May* did stand for that (erroneous) proposition, more recent precedent abrogates it. By adhering Indiana's Takings Clause to the Fifth Amendment's, the Indiana Supreme Court recognizes that takings occur through the exercise of police powers when "the damage is substantial." *Town of Linden*, 204 N.E.3d at 236. There is no dispute that a SWAT raid to apprehend a dangerous criminal is a use of the police power for a public purpose. And here the damage to Hadley's property was substantial. That "type of physical appropriation reflects the 'clearest sort of taking,' which [the Indiana Supreme Court] assess[es] by 'using a simple, *per se* rule: The government must pay for what it takes.'" *Id.* (quoting *Cedar Point*, 594 U.S. at 148).[16]

---

[16] The County relies only on *Stone v. Fritts*, 82 N.E. 792 (Ind. 1907). Dkt.10 at 4–5. Apart from being abrogated by more recent precedent observing that regulations can amount to takings, the case concerned conditions on a government-issued teaching license—not physical appropriation of property.

At bottom, as of 2003 (when the Indiana Supreme Court decided *Cheatham*) Indiana tracks the Fifth Amendment's Takings Clause when interpreting the state's parallel provision. Because Indiana courts never chose to follow the Seventh Circuit's *Johnson* decision and because that decision was wrong and has since been abrogated, Hadley's Article I, Section 21 Takings claim should prevail for the reasons explained above in Part III.A.

### b.  Particular Services Clause

The City's arguments about Indiana's Particular Services Clause fair no better. The relevant constitutional text states, "No person's particular services shall be demanded, without just compensation." Ind. Const. art. I, § 21. Hadley was compelled to immediately and indeterminately relinquish her exclusive right to possess and to exclude persons from her home and other property—a service unique to her as owner of the home police assaulted. She was also compelled to provide a unique homeowner service in bringing the property back into compliance with ordinances and standards of habitability.

We agree with the City that "[t]his constitutional provision is not implicated simply because governmental action imposes a burden on someone." Dkt.18 at 7. But the question is whether the burden "was the result of the State's isolated and unreasonable demand upon [the plaintiff's] services which ought to be paid for by the public at large." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 416 (Ind. 1991).[17] Indiana cases give four datapoints that guide the analysis.

First, mental hospital patients receiving certain public benefits (housing, food, and care) could be required to perform upkeep tasks at the hospital without compensation. *Id.* That's

---

[17] A claim under the Particular Services Clause must allege that (1) particular services were performed, (2) on the State's demand, (3) without just compensation. *Cheatham*, 789 N.E.2d at 476. The City and County do not argue that Hadley has failed to allege the second and third elements. Indeed, she has clearly alleged that she had no choice in the police's commandeering of her property and leaving her with an uninhabitable mess to clean up, and that she was not compensated for these services. Dkt.5, ¶¶34, 38–45, 51–56.

because they were the "direct and primary beneficiar[ies] of [their] own labor," benefiting both from the fruits of their labor and from the act of working, which improved their mental health. *Id.*

Second, fact witnesses may be required to testify in criminal trials without compensation, because fact testimony was historically an uncompensated service that all members of the public have a duty to provide. *Israel v. State*, 8 Ind. 467, 468 (1856). It is a burden "that falls upon all alike." *Buchman v. State*, 59 Ind. 1, 12 (1877).

Third, an expert witness may refuse to testify in criminal trials without compensation. That is because "his [professional] knowledge is his capital stock," and "[t]he purpose of his service is not to prove facts in the cause, but to aid the court or jury in arriving at a proper conclusion from facts otherwise proved." *Id.* at 12–13.

Fourth, an attorney may refuse to represent criminal defendants without compensation. That is because "his profession is his means of livelihood. . . . His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic." *Webb v. Baird*, 6 Ind. 13, 17 (1854).

The City's only argument is that Hadley is more like the mental-hospital patients than an expert witness or attorney because her services were "for her own benefit." Dkt.18 at 8. We disagree. Hadley did not benefit from her services any more than an expert witness or attorney benefits from criminal justice being done in a criminal trial. In fact, Hadley benefited much less (if at all). Forcibly lending her home to officers did not protect her, anyone else, or her property from harm. The suspect was never at her home. And dozens of police officers surrounded and assaulted her home while the fugitive was free to harm others wherever he was. Nor did cleaning up her house benefit her. She had to spend time inside and around her home breathing noxious fumes while cleaning up glass and other debris—all to return her house to a habitable state. This did not

bolster her mental or physical health. Sure, she benefited from having a livable house again, but unlike in *Bayh*, Hadley's house was not a benefit she had received from the state and she was not performing upkeep tasks to continue receiving that benefit. Nor can all members of the public alike provide these homeowner services—distinguishing this case from the common duty of citizens to serve as fact witnesses. The services demanded of Hadley as a homeowner are as particularized as an attorney's skills or an expert's testimony and "are no more at the mercy of the public . . . than are the goods of the merchant, or the crops of the farmer." *Webb*, 6 Ind. at 17.

### 2. Indiana's Takings and Particular Services Clauses are self-executing.

The City argues that the Indiana Constitution provides no cause of action by itself. Dkt.18 at 8. This is flatly wrong. The Indiana Supreme Court has been clear about the self-executing nature of the Takings Clause: "We agree that the Takings Clause creates within itself the requirement of just compensation and that Article I, Section 12 constitutionally mandates judicial enforcement of that remedy." *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006). Indiana courts have held that remedies are generally left "to the legislature and the common law" because the constitution itself usually does not prescribe a remedy for specific rights violations. But the Takings and Particular Services Clauses are exceptional because "the text of the Constitution" itself mandates "just compensation." *Id.*[18] The City relies on quotes from cases about rights secured elsewhere, not Article I, Section 21.

---

[18] Other state constitutions' takings provisions are similarly self-executing. *See, e.g.*, *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 16 P.3d 533, 537 (Utah 2000) ("Except for the Takings Clause, the Utah Constitution does not expressly provide damage remedies for constitutional violations."); *City of Tupelo v. O'Callaghan*, 208 So.3d 556, 566 (Miss. 2017) (explaining that the state's Takings Clause is "self-executing"); *DW Aina Leʻa Dev., LLC v. State Land Use Comm'n*, 477 P.3d 836, 843 (Haw. 2020) ("[T]he Takings Clause of the Hawaiʻi Constitution contains self-executing language, enabling suits based on the provision itself without implementing legislation."); *Zinn v. State*, 334 N.W.2d 67, 76 (Wis. 1983) (holding that the state's Takings Clause "is self-executing and needs no express statutory provision for its enforcement . . . because just compensation following a taking 'is a constitutional necessity rather than a legislative dole'").

### 3.   Immunity under the Indiana Tort Claims Act does not apply.

The City finally argues that a statute—the Indiana Tort Claims Act—immunizes the government from compensating Hadley. Dkt.18 at 9. This, too, is wrong. If, as we established above, Hadley has stated a taking or services-demanded claim under Article I, Section 21, then the constitution itself requires just compensation. No statute can relieve the government of a constitutional obligation. And as the Indiana Court of Appeals correctly explained, "[t]he immunity provisions provided by the ITCA do not apply to claims for inverse condemnation, *see* Ind. Code § 34-13-3-1 (stating Indiana Code chapter 34-13-3 'applies only to a claim or suit in tort'), and could not apply in any event because just compensation is constitutionally required." *Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016).[19]

The City relies on its (mis)characterization of Hadley's claims as torts. As explained above, Part III.A.1.a., Hadley has not alleged any tortious conduct by any officer. The City relies on *O'Bannon v. City of Anderson*, but that case involved only tort claims: "negligent infliction of emotional distress, trespass, and illegal search and seizure"—no inverse condemnation claim. 733 N.E.2d 1, 2 (Ind. Ct. App. 2000).[20] Immunity does not apply.

### C.  If this Court dismisses the federal claims, the state-law claims should be remanded.

The Seventh Circuit presumes jurisdiction will be relinquished over state-law claims when

---

[19] *Cf. Steele*, 603 S.W.2d at 791 ("That [takings] claim was made under the authority of the Constitution and was not grounded upon proof of either a tort or a nuisance. It was a claim for the destruction of property, and governmental immunity does not shield the City of Houston. The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."); *City of Tupelo*, 208 So. 3d at 566 (explaining that the state's Takings Clause is "self-executing and cannot be precluded by the protections of an act, like the [Mississippi Tort Claims Act], a creation of the Legislature").

[20] To the extent *Indiana State Police v. May* stood for the proposition that a takings claim for SWAT destruction is a tort for purposes of the ITCA, that conflicts with the Court of Appeals's more recent decision in *Birge*, 57 N.E.3d at 845. It has also been superseded by more recent cases from the Indiana Supreme Court, which recognize that destruction through use of the police power can amount to a taking requiring just compensation under the Takings Clause. *Town of Linden*, 204 N.E.3d 229. *May* likely never stood for that proposition, though, for reasons explained above. *See supra* Part III.B.1.a.

all federal claims fall out before trial. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (CA7 2012). The presumption "should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (CA7 1996), *vacated on other grounds*, 522 U.S. 3 (1997); *see also Huffman v. Hains*, 865 F.2d 920, 923 (CA7 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns.").

This concern is acute for state constitutional questions, because when states interpret their own constitutions, they partake in a nationwide dialogue about the scopes of parallel provisions in the federal and state constitutions. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (CA7 1997) (modifying dismissal with prejudice to without prejudice to refile in state court, holding that the "no brainer" exception to courts' duty to relinquish supplemental jurisdiction did not apply "especially because the supplemental claim is based on a state constitution"); *see generally* Jeffrey S. Sutton, *51 Imperfect Solutions* (2018). The Indiana Supreme Court encourages opportunities to develop "[i]ndependent and robust state constitutional law," which "supplies far-reaching, inter-related benefits: the enrichment of American constitutional jurisprudence and the protection of civil liberties." *State v. Katz*, 179 N.E.3d 431, 443 (Ind. 2022) (quoting Loretta H. Rush & Marie Forney Miller, *Cultivating State Constitutional Law to Form a More Perfect Union—Indiana's Story*, 33 Notre Dame J.L. Ethics & Pub. Pol'y 377, 380–81 (2019)).[21]

Certain circumstances may displace the presumption of relinquishment:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial

---

[21] *See also* Justice Derek R. Molter, *Joining the Indiana Supreme Court: Rookie Year Reflections*, 57 Ind. L. Rev. 1, 3–4 (2023) ("[O]ur Court remains interested in developing case law that examines how our state constitution operates separate from the federal constitution, either because the provisions in the two constitutions sometimes vary, or because our Court's interpretation of similar provisions may differ from how the federal courts interpret them.").

> resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (CA7 2009) (cleaned up). None of those circumstances exist here. Remand, instead of dismissal without prejudice, avoids any statute-of-limitations problem. The claims would proceed, without refiling, in the state court where they originated. *E.g.*, *Shultz v. Schneider Elec. USA, Inc.*, No. 3:23-cv-846-DRL-MGG, Dkt.29 (N.D. Ind. Jan. 25, 2024) (Leichty, J.). Few judicial resources have been spent. Defendants' pair of motions to dismiss present the first substantive issue requiring judicial attention. *See RWJ Mgmt.*, 672 F.3d at 480–82; *Olive Can Co. v. Martin*, 906 F.2d 1147, 1153 (CA7 1990) (affirming relinquishment "just before trial after five years of discovery").

Defendants' only argument is that Indiana law is "crystal clear," so the court should put Hadley "out of [her] misery [here] and [now], rather than burdening the state courts with a frivolous case." Dkt.18 at 5–6 (quoting *Van Harken*, 103 F.3d at 1354).[22] But as the preceding sections demonstrate, Indiana law is far from "absolutely clear," *Sharp Elecs. Corp.*, 578 F.3d at 515, that Hadley's claims are doomed and "frivolous," *Van Harken*, 103 F.3d at 1354. So they are not "no brainers" that overcome the presumption that the Indiana-law claims should be remanded to the Indiana court where Hadley filed them.

## IV. CONCLUSION

The Court should deny the motions to dismiss. If this Court dismisses Hadley's federal claims, it should remand her state claims to the St. Joseph Circuit Court.

---

[22] The County defendants do not even make this argument. They simply "request the Court grant their motion as to Plaintiff's state court claims in order to efficiently effectuate a resolution to this matter." Dkt.10 at 5.

Respectfully submitted,

/s/ Marie Miller
Marie Miller
IN Attorney No. 34591-53
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012
480-557-8300 (Phone)
480-557-8305 (Fax)
mmiller@ij.org

Patrick Jaicomo
MI Attorney No. P75705
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
703-682-9320 (Phone)
703-682-9321 (Fax)
pjaicomo@ij.org

*Counsel for Plaintiff*

26

## CERTIFICATE OF SERVICE

I certify that on April 26, 2024, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which sent notification of the filing to the following:

Stephanie L. Nemeth
nemeth@aaklaw.com

Peter J. Agostino
agostino@aaklaw.com

Joseph W. Smith
jsmith@khkklaw.com

Matthew S. Clark
mclark@khkklaw.com


/s/ Marie Miller
Marie Miller
INSTITUTE FOR JUSTICE

27