UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMY HADLEY, | |
| Plaintiffs, | |
| v. | CAUSE NO. 3:24-cv-29 DRL-MGG |
| CITY OF SOUTH BEND *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Law enforcement allegedly damaged Amy Hadley's home during execution of a search warrant. When she was not compensated, she sued the City of South Bend, St. Joseph County, the County Board of Commissioners, and police departments for both the City and County on federal and state constitutional takings claims. The defendants ask the court to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).[1] The court dismisses the federal claims and remands the state claims.

## BACKGROUND

The court takes all well-pleaded facts in the complaint as true for the purposes of this motion. In the early afternoon of June 10, 2022, law enforcement officers from the City of South Bend and St. Joseph County surrounded Amy Hadley's South Bend home [1 ¶¶ 24, 29-30]. Ms. Hadley lived there with her teenage daughter and son [*id.* ¶ 23]. The officers had traced a dangerous fugitive's location to Ms. Hadley's home, relying on what they believed to be his Facebook account and IP address [*id.* ¶¶ 25-26]. In reality, the fugitive was not in Ms. Hadley's home [*id.* ¶ 27]. Based on the belief that the fugitive accessed his Facebook account in Ms. Hadley's home, a court issued a warrant authorizing the police to search for the fugitive there [*id.* ¶ 29].

---

[1] The parties agree that the South Bend Police Department should be dismissed as a party, as it is not a suable entity. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). The court thus dismisses the South Bend Police Department as abandoned.

Using a bullhorn, officers ordered all in the house to exit with their hands up [*id.* ¶ 30]. Ms. Hadley's fifteen-year-old son, the only family member at home then, complied [*id.* ¶¶ 23, 31]. Officers recognized that the teenager wasn't the fugitive but took him to the police station [*id.* ¶¶ 31-33]. One officer still believed that the fugitive was active on Facebook in Ms. Hadley's home at the time [*id.* ¶ 34].

Soon thereafter, Ms. Hadley and her nineteen-year-old daughter arrived at the scene after learning about the incident from neighbors [*id.* ¶¶ 35-36]. They notified the officers that they had neither seen nor heard of the fugitive—not even through their security cameras in their home [*id.* ¶¶ 37-38]. After more than an hour of surveillance, and seeing no one else emerge from the house, police began to launch upwards of thirty tear gas cannisters through the windows [*id.* ¶¶ 40-41]. South Bend SWAT officers next deployed flash-bang grenades and entered the front door to commence a sweep of the home [*id.* ¶ 42]. St. Joseph County deputies conducted their own search [*id.* ¶ 45]. Ultimately, the search revealed that the fugitive was not in Ms. Hadley's house [*id.* ¶ 46]. Though the IP address information proved to be a false lead, the suspect was eventually apprehended at a different location four days later [*id.* ¶ 48].

The damage sustained by Ms. Hadley's home was substantial. The tear gas cannisters shattered windows, dented walls, and destroyed the family's X-Box console [*id.* ¶ 41]. Broken glass covered Ms. Hadley's bed [*id.* ¶ 40]. Nearly every porous object in the house was destroyed by the noxious fumes [¶ 41]. The extensive search resulted in the destruction of security cameras, window curtains, a mirror, storage bins, a bathroom fan fixture, and wall panels [*id.* ¶ 43]. The total damage exceeded $16,000 [*id.* ¶ 63]. The state of the home forced Ms. Hadley and her son to sleep in her car for several nights, and her daughter slept elsewhere [*id.* ¶ 54].

Ms. Hadley sent written demands for compensation to both the City and the County to cover the costs after insurance [*id.* ¶¶ 58-59]. The City refused her demand and directed her to file a claim under the Indiana Tort Claims Act [*id.* ¶ 60]. St. Joseph County did not respond [*id.*]. This suit ensued.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

Ms. Hadley alleges a violation of her constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, Ms. Hadley must show that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Ms. Hadley asserts that she and her children endured considerable hardship from law enforcement's search. The question today is whether the Fifth Amendment of the United States Constitution entitles them to compensation.

The Fifth Amendment's takings clause, applied to the states through the Fourteenth Amendment, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021), says "private property [cannot] be taken for public use, without just compensation." U.S. Const. amend. V. A variety of government actions can result in a taking. In the simplest application of the Fifth Amendment, the government commits a taking when it

3

uses the power of eminent domain to acquire title to property. *Cedar Point*, 594 U.S. at 147. Even if title is not taken, the appropriation of real or personal property still requires compensation. *Id.* For Fifth Amendment purposes, the law treats destroyed property as a taking just the same as appropriated property. *Armstrong v. United States*, 364 U.S. 40, 48-49 (1960).

Two categories of non-eminent domain takings have emerged in the law—*per se* physical takings and regulatory takings. Forcing landlords to allow the installation of television cables, granting unionizers access to employers' private premises, and confiscating raisins from farmers have all been held *per se* physical takings. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982); *Cedar Point*, 594 U.S. at 162; *Horne v. Dept. of Agric.*, 576 U.S. 351, 361 (2015). The law has also recognized regulatory takings—restrictions that diminish essentially all economic value of private property. *See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Such takings are premised on the idea that "if regulation goes too far it will be recognized as a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

That said, property rights must sometimes succumb to the state's police power—the power to promote public health, safety, and morals. *Barnes v. Glen Theatre*, 501 U.S. 560, 569 (1991). "As long recognized, some values are enjoyed under an implied limitation and must yield to the police power." *Mahon*, 260 U.S. at 413. The Fifth Amendment does not apply when the government merely asserts a "pre-existing limitation upon the landowner's title." *Lucas*, 505 U.S. at 1028-29. "These background limitations also encompass traditional common law privileges" such as "a privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances." *Cedar Point*, 594 U.S. at 160-61. Indeed, "government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners." *Id.* at 161; *see also Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (holding that a forfeiture proceeding that was valid under the Fourth Amendment could not be a

4

taking because the government had "already lawfully acquired [the property] under the exercise of governmental authority other than the power of eminent domain").

Central to today's dispute is *Johnson v. Manitowoc County*, 635 F.3d 331 (7th Cir. 2011). In *Johnson*, police conducted an extensive search of an innocent landlord's property pursuant to a warrant. *Id.* at 333. Officers jackhammered his garage floor looking for evidence. *Id.* at 333-34. They rendered his trailer home mostly uninhabitable by cutting up walls, carpet, and a couch. *Id.* The landlord, like Ms. Hadley today, did not argue that the warrant or search was invalid, only that the destruction constituted a taking. *Id.* The court held that police searches fall outside the Fifth Amendment's scope: "the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Id.* at 336 (citing *Bennis*, 516 U.S. at 452). Indeed, the court of appeals described the takings claim as a "non-starter." *Id.*

Ms. Hadley asserts that the Fifth Amendment requires the defendants to compensate her for the damage done to her house. The defendants argue that *Johnson* excludes lawful police searches from the constitutional definition of a taking. Ms. Hadley responds that *Johnson* is irrelevant today, having been implicitly abrogated by subsequent Supreme Court jurisprudence. She notes that both before and after *Johnson*, the Supreme Court has held a variety of government actions besides eminent domain to constitute takings. So, the argument goes, *Johnson*'s distinction between eminent domain (requiring compensation) and police powers (not requiring compensation) is no longer the law.

But this court is duty-bound to apply the law, and inviting this court to say the court of appeals has effectively been overruled in *Johnson* sits above its pay grade. That is no less true when Ms. Hadley presents the argument that *Johnson* has been implicitly abrogated. Some exercises of police power, like granting union organizers access to land and confiscating crops, do indeed implicate the takings clause. *See Cedar Point*, 594 U.S. at 162; *Horne*, 576 U.S. at 367. The law has acknowledged these types of takings since *Johnson. See Conyers v. City of Chi.*, 10 F.4th 704, 711 (7th Cir. 2021); *Squires-Cannon v. Forest Preserve*

5

*Dist. of Cook Cnty.*, 897 F.3d 797, 802 (7th Cir. 2018). But it does not follow that *all* police power actions impacting property rights are compensable simply because some are. *See Cedar Point*, 594 U.S. at 161 ("[G]overnment searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners.").

Even courts that add the gloss of history and tradition to the analysis, building on the same lens used by the Supreme Court, still hold that damage caused by police in cases like today's is not compensable. *See Baker v. City of McKinney*, 84 F.4th 378, 383-89 (5th Cir. 2023); *see also Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637-44 (2023). Ms. Hadley has not cited any authority for the proposition that damage from lawful police investigations or searches are compensable under the Fifth Amendment (aside from a state tort or other claim). To the contrary, a long tradition counsels that lawful policing activities are not Fifth Amendment takings. *See also* Derek T. Muller, Note, *As Much Upon Tradition as Upon Principle*, 82 Notre Dame L. Rev. 481, 518 (2006) ("consensus among contemporary legal scholars" on this point despite varying rationales). But today the answer is much simpler—the court must follow *Johnson*.

That leaves two Indiana constitutional claims remaining against the defendants based on the taking of property and services without just compensation. *See* Ind. Const. art. I, §§ 12, 21; Ind. Code § 32-24-1-16. Generally, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994); 28 U.S.C. § 1367(c)(3). That said, if "an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case." *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997). But the presumption of remand still applies when the state law claims are based on the state constitution. *Id.*

The defendants argue that Ms. Hadley's Indiana takings claims also plainly fail, so they should be dismissed now out of efficiency rather than remanded. Though Indiana takings law largely tracks federal

6

law, *see Indiana v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 211 (Ind. 2009), Indiana still views its Constitution as an "[i]ndependent and robust" source of constitutional law, *Indiana v. Kratz*, 179 N.E.3d 431, 443 (Ind. 2022). A sound sense of federalism and the evolving nature of jurisprudence in this area favor permitting Indiana courts to decide the scope of Indiana's Constitution.

## CONCLUSION

Accordingly, the court GRANTS IN PART the motions to dismiss [9, 17], DISMISSES all claims against the South Bend Police Department, DISMISSES Ms. Hadley's federal takings claims against the remaining defendants, DENIES the motion for oral argument in light of *Johnson* [20], and REMANDS the state law claims to the St. Joseph Circuit Court.

SO ORDERED.

July 18, 2024                                                     *s/ Damon R. Leichty*
                                                                  Judge, United States District Court